UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DARIEN MITCHELL, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:21-CV-610 RLM-MGG |
| | ) | |
| WILLIAM HYATTE, | ) | |
| | ) | |
| *Defendant* | ) | |

OPINON AND ORDER

Darien Mitchell has sued Warden William Hyatte, alleging that Warden Hyatte kept Mr. Mitchell in a cell with constitutionally inadequate conditions at Miami Correctional Facility in October 2019. Warden Hyatte moved for summary judgment arguing Mr. Mitchell didn't exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). [Doc. 33]. Mr. Mitchell cross-moved for summary judgment on the exhaustion defense, [Doc. 54], but later withdrew the motion. [Doc. 66]. Warden Hyatte moves for leave to file surreply, [Doc. 68], and Mr. Mitchell moves unopposed to file corrected declaration. [Doc. 71]. For reasons explained in this order, the court denies Warden Hyatte's motion for summary judgment, denies Warden Hyatte's motion for leave to file surreply, grants Mr. Mitchell's motion to file corrected declaration, and orders that Warden Hyatte file a notice within fourteen days of this order either withdrawing the exhaustion defense or asking for a hearing pursuant to Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

Legal Standard

A party is entitled to summary judgment when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court accepts the non-movant's evidence as true and draws all reasonable inferences in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A party can't defeat summary judgment by merely alleging a factual dispute; "instead the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2).

A defendant isn't entitled to a jury trial on contested issues involving exhaustion. Wagoner v. Lemmon, 778 F.3d 586, 590 (7th Cir. 2015) (discussing Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008)). A court holds a Pavey hearing to resolve issues of fact bearing on exhaustion, but "[w]hen there are no disputed facts regarding exhaustion, only a legal question, the court may resolve the issue without a hearing. Vela v. Ind. Dep't of Corr., No. 3:16 CV 51, 2017 U.S. Dist. LEXIS 9279, at *2 (N.D. Ind. Jan. 24, 2017).

Background

Darien Mitchell alleges that Warden Hyatte violated his constitutional rights when he kept Mr. Mitchell in a restrictive housing unit cell at Miami

Correctional Facility in October 2019. The cell's light was broken and its window was covered in sheet metal, so the cell was extremely dark. Mr. Mitchell didn't have drinking water. He claims this treatment violated his Eighth Amendment right to be free from cruel and unusual punishment and seeks to hold Warden Hyatte accountable by way of 42 U.S.C. § 1983.

Mr. Mitchell sued from prison, so Warden Hyatte isn't liable if he can show that Mr. Mitchell didn't exhaust administrative remedies available to him. *See* 42 U.S.C. § 1997e(a).

## DISCUSSION

Warden Hyatte moves for summary judgment on the exhaustion defense. The Prison Litigation Reform Act limits prisoner's ability to sue over prison conditions: "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Act's purpose is to reduce the number and improve the quality of prisoner suits, Woodford v. Ngo, 548 U.S. 81, 94 (2006), and the administrative exhaustion requirement achieves that purpose by "permit[ting] the prison's administrative process to run its course before litigation begins." Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam). Requiring administrative exhaustion might let the prison respond to the grievance in a manner acceptable to the prisoner, avoiding litigation altogether. Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).

The Act's exhaustion requirement demands strict compliance. Id. "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Yet a prisoner need only exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a); a prisoner "need not exhaust unavailable ones." Ross v. Blake, 578 U.S. 632, 642 (2016).

Warden Hyatte moves for summary judgment, primarily based on Miami Correctional Facility's grievance records. During the time of the allegations, Miami Correctional Facility had a grievance policy that required four steps: (1) attempting to informally resolve an issue; (2) filing a formal grievance; (3) appealing the grievance response to the warden; and (4) appealing the warden's response to the central office. Mr. Gapski, a grievance specialist at Miami Correctional Facility, reviewed prison records and found no grievances from Mr. Mitchell about his restrictive housing cell conditions. Records show that Mr. Mitchell was kept in restrictive housing from October 18, 2019, to October 22, 2019. Records also show that the grievance specialists accepted no grievances from Mr. Mitchell in all of 2019 and 2020. So, Warden Hyatte concludes, Mr. Mitchell must not have filed any grievances about his time in restrictive housing, so didn't exhaust administrative remedies.

Mr. Mitchell claims he exhausted *available* remedies. He supports his claim with his own declaration. He says in his first declaration, [Doc. 52-7 at 57–59], that he was kept in restrictive housing for ten to fourteen days in October 2019. He claims he requested grievance forms, but Sergeant Murphy and

4

Sergeant Bowman told him he had to file an informal grievance before he could get a formal grievance form. He sent request for interview forms to Warden Hyatte to try to resolve his cell conditions. He heard no response, so asked Sergeants Murphy and Bowman what to do. They told Mr. Mitchell he had to wait for a response before he could do anything else. Mr. Mitchell nevertheless asked for grievance forms, but the sergeants told him they didn't have any and a counselor would have to give the forms to Mr. Mitchell. Mr. Mitchell never encountered a counselor, so he never got to ask for a form.

Mr. Mitchell includes as exhibits to his declaration two copies of request for interview forms. [Doc. 52-7 at 61]. The first complains about cell conditions to Warden Hyatte and is dated October 11, 2019. The second repeats similar complaints to Warden Hyatte and is dated October 16, 2019.

After regular briefing was done, Mr. Mitchell moved to file corrected declaration, [Doc. 71], based on arguments and evidence raised in Warden Hyatte's reply. Warden Hyatte doesn't oppose the motion. The court grants the motion to file corrected declaration.

Mr. Mitchell's corrected declaration is largely the same as his first, with two important exceptions. First, Mr. Mitchell's first declaration said he was in restrictive housing for ten to fourteen days. Prison records say Mr. Mitchell was only in restrictive housing from October 18 to October 22. Mr. Mitchell clarifies in his corrected declaration that he doesn't have records to contradict the prison's records, but he believes he was in restrictive housing for longer than October 18 to October 22. Second, Mr. Mitchell's first declaration said he

5

submitted two request for interview forms while in restrictive housing and the forms were dated October 11 and 16. Prison records show that Mr. Mitchell didn't arrive in restrictive housing until October 18, after the forms are signed. Mr. Mitchell clarifies in his corrected declaration that he did file them from restrictive housing and he must have written the incorrect dates because of his confusion from being in an extremely dark cell. Mr. Mitchell had moved for summary judgment on the exhaustion defense, [Doc. 54], but then acknowledged that the conflict between prison records and his declaration posed a fact issue that precluded summary judgment, and so withdrew his motion for summary judgment. [Doc. 66].

According to Mr. Mitchell, if his account is right, then he exhausted available remedies. He claims he tried to resolve informally and received no response. When he asked what he should do next, prison staff repeatedly told him he had to wait (when policy really required that he file a grievance), and then when he asked for grievance forms, he was told he had to get one from a counselor, but no counselor was available. This, Mr. Mitchell says, shows that remedies were unavailable because prison staff was "unable or consistently unwilling to provide any relief," and because prison staff "misled [him] so as to prevent [his] use of otherwise available procedures." Ross v. Blake, 578 U.S. 632, 643–644 (2016).

Warden Hyatte raises a several counterarguments to Mr. Mitchell's claims and evidence. First, he argues that Mr. Mitchell relies on hearsay statements that can't be used at summary judgment. See Carlisle v. Deere & Co., 576 F.3d

6

649, 955 (7th Cir. 2009). Mr. Mitchell attested that Sergeants Murphy and Bowman told him he had to wait for a response to his informal grievance before filing a formal grievance. Warden Hyatte argues those statements are inadmissible hearsay.

A statement is hearsay if the declarant makes the statement not while testifying at trial and the statement is offered for the truth of the matter asserted. Fed. R. Evid. 801(c). The statements are offered for the effect on Mr. Mitchell, the listener, rather than for the truth of the matter asserted. Mr. Mitchell uses them to show that he was told to wait to file formal grievances, and that he had an excusable reason for not filing formal grievances. The objection is overruled.

Next, Warden Hyatte argues Mr. Mitchell can't base any argument on his personal ignorance of the grievance policy. According to Mr. Gapski, all prisoners are taught about the grievance policy during admission and orientation, so Mr. Mitchell must have been aware of the process and can't claim he didn't know how the process worked.

This argument isn't responsive to Mr. Mitchell's claims and arguments. He claims he was misled by prison staff, didn't receive responses, and wasn't given proper forms. His complete knowledge of what the policy said on paper wouldn't cure those issues.

Warden Hyatte then argues that Mr. Mitchell was released from restrictive housing within the ten-days limitation period for grievances. So, according to Warden Hyatte, Mr. Mitchell could have filed a grievance after he was moved

7

from restrictive housing and his grievance would be timely. Mr. Mitchell didn't do this, so he didn't exhaust administrative remedies.

Accepting this argument requires disregarding Mr. Mitchell's evidence. Mr. Mitchell claims that prison staff affirmatively misled him into thinking he had to wait until his attempt at informal resolution received a response. The court must view the record in the light most favorable to Mr. Mitchell on Warden Hyatte's motion for summary judgment, so the court can't conclude that Mr. Mitchell was perfectly uninhibited from filing proper grievances.

Warden Hyatte argues that other prisons in restrictive housing completed each step of the grievance process, so Mr. Mitchell must have also been able to as well. Warden Hyatte specifically cites Jeremy Blanchard, *see* Blanchard v. Hyatte, No. 3:21-CV-160 (N.D. Ind.).

That Mr. Blanchard completed each step doesn't entitle Warden Hyatte to summary judgment on Mr. Mitchell's claim. Mr. Mitchell claims that prison staff misdirected him and made use of the process impossible. That Mr. Blanchard didn't hit all the same obstacles doesn't prove that Mr. Mitchell also didn't have any obstacles.

Finally, Warden Hyatte addresses the inconsistency between prison records and Mr. Mitchell's declaration. According to Warden Hyatte, Mr. Mitchell's declaration and request for interview forms are "especially suspect because they purport to demonstrate that Mr. Mitchell attempted to utilize the grievance process and was denied, as if prepared in anticipation of Defendant['s] motion[] for summary judgment on exhaustion." [Doc. 62 at 7]. He believes Mr.

8

Mitchell's declaration is even "more troubling" because it includes statements that "directly contradict the evidence on record in a sworn declaration." [Doc. 62 at 7]. He argues that he's entitled to summary judgment because it's impossible for Mr. Mitchell to have filed request for interview forms about his cell conditions before he was in the restrictive housing cell.

Warden Hyatte also moved for leave to file surreply. [Doc. 68]. Mr. Mitchell opposed the motion. The proposed surreply addresses the conflict between Mr. Mitchell's declaration and exhibits and the prison records. Warden Hyatte argues the surreply is necessary because Mr. Mitchell's reply "incorrectly states that material facts exist that would preclude the Court from granting defendant's motion for summary judgment," and the surreply "addresses Plaintif's arguments that are nothing more than red herrings." [Doc. 68 at 2].

Courts generally disfavor surreplies, though may allow surreplies if they address new issues or development in the law. Fletcher v. Hoeppner Wagner & Evans, LLC, No. 2:14-CV-231, 2018 U.S. Dist. LEXIS 135817, at *3–4 (N.D. Ind. Aug. 10, 2018). Denying a surreply is appropriate "when the movant has had the opportunity to thoroughly brief the issue." Univ. Healthsystem Consortium v. UnitedHealth Grp., Inc., 68 F. Supp. 3d 917, 922 (N.D. Ill. 2014). Warden Hyatte's proposed surreply doesn't address new arguments and echoes arguments he made in his reply/response, so the court denies the motion for leave to file surreply.

Warden Hyatte insists there's no genuine issue of fact because Mr. Mitchell's account is impossible in light of his records. If Mr. Mitchell didn't get

9

to restrictive housing until October 18, he couldn't have signed any request for interview form about his cell conditions until October 18. His forms must therefore be falsified or otherwise not credible.

This argument rests on the assumption that the prison documents are more reliable than Mr. Mitchell's testimony. Mr. Mitchell, meanwhile, stands by his word and offers a possible explanation — he might have written the wrong date in his confusion. The court must construe all facts and draw reasonable inferences in Mr. Mitchell's favor on Warden Hyatte's motion for summary judgment. Accepting the prison records as more reliable than Mr. Mitchell's testimony would go beyond the court's role, absent a hearing, so the motion for summary judgment must be denied.

Whether Mr. Mitchell exhausted administrative remedies depends on whether he attempted to informally resolve his complaint. If Mr. Mitchell's assertions are right, then he did what he could with informal attempts at resolving his issues and the next steps — formal grievances and appeals — weren't available because of misdirection and unavailability of grievance forms. If Warden Hyatte's evidence is accurate and more credible than Mr. Mitchell's assertions, then Mr. Mitchell didn't try to resolve his complaint informally, and he didn't exhaust available remedies.

Evaluating whether Mr. Mitchell's assertions are correct would require a hearing as explained in <u>Pavey v. Conley</u>, 544 F.3d 739 (7th Cir. 2008). If Warden Hyatte wants to continue to pursue the affirmative defense of exhaustion, he must ask for a <u>Pavey</u> hearing.

For these reasons, the court:

(1) DENIES Warden Hyatte's motion for summary judgment, [Doc. 33];

(2) DENIES Warden Hyatte's motion for leave to file surreply, [Doc. 68];

(3) GRANTS Mr. Mitchell's motion to file corrected declaration, [Doc. 71]; and

(4) ORDERS Warden Hyatte to file a notice within fourteen days of this order either withdrawing the exhaustion defense or asking for a hearing pursuant to Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

SO ORDERED.

ENTERED:   August 15, 2023

/s/ Robert L. Miller, Jr.
Judge, United States District Court