UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DARIEN MITCHELL,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM HYATTE,<br><br>Defendant. | CASE NO. 3:21-CV-610-CCB-MGG |

**REPORT AND RECOMMENDATION**

Darien Mitchell is an inmate in the custody of the Indiana Department of Correction who was formerly incarcerated[1] at the Miami Correctional Facility in Bunker Hill, Indiana ("MCF"). Mr. Mitchell sued MCF Warden William Hyatte on August 18, 2021, alleging that Warden Hyatte violated Mr. Mitchell's Eighth Amendment rights by placing him in a restrictive housing cell with a blocked window, no light, and dangerous and unsanitary conditions. [DE 46 at 6, ¶51]. Warden Hyatte later moved for summary judgment, asserting as an affirmative defense that Mr. Mitchell failed to exhaust his administrative grievance remedies as required by 42 U.S.C. § 1997e(a). Mr. Mitchell cross-moved for summary judgment, asserting that he exhausted all grievance remedies available to him. Mr. Mitchell later withdrew his motion, leaving only Warden Hyatte's motion for the Court's consideration. [*See* DE 66].

---

[1] Mr. Mitchell is now incarcerated at the Correctional Industrial Facility in Pendleton, Indiana. [*See* DE 83].

On August 15, 2023, the Court denied Warden Hyatte's motion for summary judgment finding that there was a genuine dispute of material fact as to whether Mr. Mitchell attempted to informally resolve his complaints about the cell. To resolve this factual dispute, Warden Hyatte requested an evidentiary hearing as contemplated by *Pavey v. Conley*, 544 F.3d 739 (7th. Cir. 2008). The evidentiary hearing was referred to the undersigned magistrate judge and was held on December 13, 2023. The parties, through counsel, presented evidence and testimony at the hearing, including a Stipulation regarding certain evidence and testimony. [*See* DE 88]. The parties also submitted post-hearing briefs on January 12, 2024, which the undersigned has considered along with the evidence presented by the parties at the hearing.

II.     **Facts**

At the hearing, Warden Hyatte submitted the grievance policy for inmates who, like Mr. Mitchell, are housed in facilities maintained by the Indiana Department of Correction ("DOC"). [DE 87, DE 33-2]. The grievance policy provides that inmates must first attempt to resolve a complaint informally. [DE 33-2 at 8-9]. Inmates can complete this first step by using a request for interview form, often referred to as a "pink request slip" or a "pink slip." [DE 91 at 53:9-18; 59:9-14]. The policy provides that, if an inmate is dissatisfied with the response to an informal grievance, the inmate must then submit a formal grievance to the Offender Grievance Specialist within ten (10) days of the incident giving rise to the complaint. [DE 33-2 at 9; DE 91 at 60:20-24]. Moreover, if an inmate is dissatisfied with the response to a formal grievance, he may then appeal to the Warden and to the Department Offender Grievance Manager. [DE 33-2 at 3].

Warden Hyatte also submitted Mr. Mitchell's Bed Location History showing the dates Mr. Mitchell was placed in restrictive housing. Ms. Tracy Worden Townsend, MCF Classification Supervisor, also testified. Ms. Townsend testified that, based on the information contained in Mr. Mitchell's Bed Location History, Mr. Mitchell was placed in a restrictive housing cell at MCF for a period of approximately five days, from October 18, 2019, to October 22, 2019. [DE 91 at 11:18-24].

Michael D. Gapski, current grievance specialist at MCF, also testified at the hearing. Mr. Gapski identified himself as the current grievance specialist at MCF but acknowledged that he was not the grievance specialist at the time of Mr. Mitchell's complaint. [DE 91 at 51-52]. Mr. Gapski first explained DOC's recordkeeping processes for inmate grievances. Mr. Gapski stated that certain DOC records maintained by grievance specialists would show informal grievances submitted by an inmate. [*Id.* at 55:24-25]. In reviewing those records in Mr. Mitchell's file, Mr. Gapski testified that Mr. Mitchell did not submit any informal grievances about his restrictive housing cell. [*Id.* at 56:2-7]. Mr. Gapski clarified, however, that, an if an informal grievance was sent directly to Warden Hyatte, Mr. Gapski would not know whether the grievance was passed on to a grievance specialist or placed in the files. [*Id.* at 59:17-25].

Mr. Gapski also reviewed Mr. Mitchell's History of Grievances at the hearing, which record formal grievances filed by inmates. Based on this, Mr. Gapski stated that Mr. Mitchell did not submit any formal grievances regarding his restrictive housing cell. [*Id.* at 55-56]. Mr. Gapski did explain that, however, that if Mr. Mitchell only

3

submitted informal grievances regarding his restrictive housing cell, this would not be reflected in the History of Grievances document presented at the hearing.

Mr. Gapski also presented additional testimony regarding the grievance process at MCF. He reiterated that, as stated in the policy itself, an inmate has 10 days from the date of an incident to submit a formal grievance but that the inmate must attempt to informally resolve the complaint first. Mr. Gapski also explained that the 10-day deadline to file a formal grievance also applies if an inmate receives no response to their informal grievance. Mr. Gapski explained that inmates are made aware of this requirement at during their admission and orientation to the facility. [*Id.* at 61:1-7].

Mr. Mitchell also testified at the hearing as to his attempts to grieve his cell conditions and his understanding of the grievance process. Mr. Mitchell acknowledged that did not submit a formal grievance regarding his restrictive housing cell but maintained that he submitted informal grievances on the DOC's pink request for interview forms. Mr. Mitchell testified that he received blank request for interview forms from Sergeant Chandler Murphy and Officer Robert Bowman, who worked in the restrictive housing unit during the time Mr. Mitchell was placed there. Mr. Mitchell also testified that, after he filled out the request for interview forms, Sergeant Murphy collected them through the cuff port in his cell. [DE 91 at 25:11-20]. Mr. Mitchell also testified that he spoke with Sergeant Murphy on multiple occasions during his time in restrictive housing. [*Id.* at 27:22-25].

Mr. Mitchell presented his personal copies of two of the informal grievances that he submitted while he was in restrictive housing. Both informal grievances were written

4

on pink requests for interview forms and addressed to Warden Hyatte. [*See* DE 52-7 at 61]. But the dates Mr. Mitchell listed on the forms do not correspond to the dates shown in MCF's Bed Location History. The forms are dated October 11, 2019, and October 16, 2019—preceding the dates reflected in his Bed Location History[2]. [*Id.*] Mr. Mitchell acknowledged the date discrepancy but maintained it was inadvertent. He stated that he did not routinely keep track of the date—as doing so makes "time go by slower" in prison—and that he was confused about the passage of time because his cell was so dark. [DE 91 at 63:13-22; 45:9-21]. Mr. Mitchell also explained that he did not attach copies of these informal grievances to his *pro se* amended complaint because he was concerned about submitting too many documents. [DE 91 at 41:9-17].

      Mr. Mitchell testified that, after he submitted his informal grievances, he was told that he had to wait for a response before he could proceed to file a formal grievance. Mr. Mitchell also explained that he did not believe he could get a formal grievance form while he was in restrictive housing because Officer Bowman had told him that only a grievance counselor could pass out those forms. [*Id.* at 40:19-23; DE 88]. Mr. Mitchell stated that a grievance counselor never passed through the restrictive housing unit while he was there, so he never had the opportunity to ask for a formal grievance form. [DE 91 at 31:5-25; 32:5-7].

---

[2] Mr. Mitchell's post-hearing brief indicates that the parties overlooked Mr. Mitchell's copy of a third informal grievance—dated October 13, 2029—that he submitted while he was proceeding *pro se*. [DE 93 at 3, fn. 1]. Mr. Mitchell had attached a personal copy of this third informal grievance to his *pro se* amended complaint. [DE 16-1].

5

Mr. Mitchell did state, though, that a Recovery While Intoxicated ("RWI") counselor met with him while he was in restrictive housing. [DE 91 at 32:8-12]. Mr. Mitchell explained that, while he asked the RWI counselor questions about the grievance process, he did not ask the RWI counselor for a formal grievance form. [*Id.* at 34:1-2]. Mr. Mitchell explained that he did not ask for a formal grievance form from the RWI counselor because he did not believe he could get grievance paperwork from the RWI counselor—as the counselor visited him to ask him about drug use and other mental health issues. [*Id.* at 33:1-5].

The parties filed a Stipulation of the testimony that Sergeant Murphy and Officer Bowen would have provided if they testified at the hearing. The Stipulation shows that both collected grievance documents from inmates when they worked in the restrictive housing unit. Sergeant Murphy also stated that his understanding was that only unit team staff could pass out formal grievance documents, so he did not provide formal grievance forms to inmates. However, he stated that he explained the grievance process to any inmates who inquired. [DE 88]. Finally, the Stipulation also provides that neither Sergeant Murphy nor Officer Bowen remember Mr. Mitchell, so neither recall having any specific conversations with him.

Finally, Warden Hyatte also entered and read into evidence certain portions of Mr. Mitchell's deposition from November 1, 2023. Warden Hyatte showed that Mr. Mitchell previously stated at his deposition that Officer Bowman—not Sergeant Murphy—had collected his informal grievances [DE 91 at 27:8-14]. During the hearing, Mr. Mitchell explained this discrepancy by stating "Bowman and Murphy worked the

6

same night. They worked. . . . They both real short, and they look just alike." [*Id.* at 27:14-21]. Defendant also showed that Mr. Mitchell had also stated during his deposition that he only spoke with Sergeant Murphy once, instead of the multiple conversations Mr. Mitchell mentioned at the hearing. [*Id.* at 29:7-9]. Finally, Defendant showed that Mr. Mitchell had previously testified that he had directly asked his RWI counselor for grievance paperwork instead of only the general questions Mr. Mitchell discussed at the hearing. [*Id.* at 33:15-25].

## II.     Standard

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). In other words, "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* at 1025. "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

But inmates are only required to exhaust administrative remedies that are available. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears on paper but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered available. *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

**III.    Discussion**

As stated, the Court's opinion and order denying the Warden's motion for summary judgment found that a genuine dispute of material fact existed as to whether Mr. Mitchell attempted to informally resolve his complaint. Mr. Mitchell argues that Warden Hyatte has not established his exhaustion affirmative defense and that the full grievance process was unavailable to him, as evidence demonstrates that prison staff misdirected Mr. Mitchell as to the informal resolution process and denied him access to formal grievance forms. Specifically, Mr. Mitchell contends that "he was told he had to attempt to informally resolve his complaint by submitting a request for interview form, and receive a response, before he could initiate the grievance process. He submitted several forms, without response, and there was nothing further he could do." [DE 93 at 3]. In response, Warden Hyatte states that prison records do not show that Mr. Mitchell

8

submitted any informal grievance forms. Warden Hyatte also disputes that Mr. Mitchell submitted the request for interview forms presented at the hearing, pointing to inconsistencies in Mr. Mitchell's testimony and evidence versus the reliability of the evidence presented by the Warden. Warden Hyatte also maintains that staff properly informed Mr. Mitchell of the grievance process.

But, as explained below, the Warden's arguments and evidence do not refute Mr. Mitchell's arguments and evidence. The Court also finds that Mr. Mitchell's arguments are corroborated by other evidence in the record such that it is credible. With Mr. Mitchell's account deemed credible, the Court can only find that the grievance process was rendered unavailable. The Court now considers the Warden's arguments in turn.

First, the Warden maintains that Mr. Mitchell never submitted any grievances about his cell and directs the Court to the prison's records. The Warden's grievance specialist, Mr. Gapski did testify that MCF maintains records of both formal and informal grievances filed by inmates and that these records contain no evidence of any grievances filed by Mr. Mitchell regarding his cell. Mr. Mitchell concedes that he never filed a formal grievance. However, Mr. Mitchell presented copies of two informal grievances that he submitted while he was in the cell. These informal grievances were written on pink request for interview forms and were addressed directly to Warden Hyatte. Mr. Gapski acknowledged that grievances addressed to and sent directly to the Warden may not be forwarded to the grievance specialist. And, given that Mr. Gapski was not the grievance specialist at the time Mr. Mitchell submitted his informal grievances, he acknowledged that he did not know what might have happened to Mr.

9

Mitchell's forms after they went to Warden Hyatte. Thus, the Court cannot find that prison records directly refute Mr. Mitchell's testimony and personal copies.

The Warden further disputes that Mr. Mitchell submitted the informal grievances presented at the hearing—primarily due to the discrepancy between the dates listed by Mr. Mitchell and the dates listed on Mr. Mitchell's MCF's Bed Location History. But Mr. Mitchell explained this discrepancy at the hearing—he did not routinely keep track of the date. Therefore, he did not know the date when he was placed in restrictive housing, and because his cell was dark during his time there, he could not tell how much time had passed.

Still, the Warden alleges that Mr. Mitchell's explanation should not credited because Mr. Mitchell is not credible, referencing the portions of Mr. Mitchell's testimony at the hearing that were inconsistent with testimony Mr. Mitchell provided at his earlier deposition. [DE 94 at 9]. The Warden first directs the Court to its Report and Recommendation issued in *McKinnon v. Redden*, No. 3:21-CV-573-JD-MGG, 2023 WL 11158939 (N.D. Ind. Dec. 8, 2023), *report and recommendation adopted*, No. 3:21-CV-573-JD-MGG, 2024 WL 1759111 (N.D. Ind. Apr. 24, 2024). There, the Court found that the inmate's testimony at the evidentiary hearing was credible because it was consistent with testimony he provided at his deposition and because other evidence presented corroborated his account. The Warden urges the Court to apply this same reasoning here, and accordingly find that Mr. Mitchell is not credible due to the inconsistencies that the Warden revealed during the evidentiary hearing.

As an initial matter, directing the Court to its analysis elsewhere and broadly asserting, without any further explanation, that it should adopt the same analysis here, is not persuasive. But even considering this argument, it is true that certain inconsistencies with Mr. Mitchell's testimony were revealed at the hearing—inconsistencies regarding which staff member collected his grievance form, or regarding how many times he spoke with certain staff, or regarding the specific questions Mr. Mitchell asked the RWI counselor about formal grievances—but the Warden never explains how these inconsistencies relate to Mr. Mitchell's knowledge of or ability to ascertain the dates of his placement in restrictive housing. Nor do these inconsistencies directly refute Mr. Mitchell's explanation that his forms were incorrectly dated because he simply did not know the date.

The Warden also challenges Mr. Mitchell's credibility by contending that he must have created these informal grievances "after the fact . . . in an attempt to survive summary judgment" as Mr. Mitchell did not include the two informal grievance forms submitted at the evidentiary hearing in his *pro se* amended complaint dated May 23, 2022. [DE 94 at 1-2, 7]. The Warden likewise questions why Mr. Mitchell did not provide his attorneys with a copy of another informal grievance he submitted—an informal grievance dated October 13, 2019, that Mr. Mitchell attached to his amended complaint. [*Id.* at 8 fn. 3]. But review of Mr. Mitchell's amended complaint addresses this concern. In his amended complaint, Mr. Mitchell alleges that he submitted three informal grievances total. [DE 16 at 3]. Mr. Mitchell also states that he kept one copy of an informal grievance—dated October 13, 2019—which he submitted with his amended

11

complaint. [*Id.*]. It follows that, with his one copy of the October 13th grievance attached to the amended complaint, he would not have had a copy to provide to his attorneys. Mr. Mitchell's counsel acknowledges that this third informal grievance was on the Court's docket and was overlooked by counsel due to an oversight. [DE 93 at 3, fn. 1].

Finally, other evidence submitted at the hearing corroborates Mr. Mitchell's testimony that he was misdirected by staff when he inquired about how to address the conditions of his cell. Mr. Mitchell testified that he was told he could only obtain a formal grievance from a grievance counselor. This testimony mirrors evidence from the parties' Stipulation, where Sergeant Murphy stated that his understanding of the grievance process was that only unit team staff could provide inmates with formal grievance forms. [DE 88 at 2, ¶3]. Sergeant Murphy likewise stated that he explained the grievance process—and presumably, this understanding—to inmates who asked him questions. This consistency provides an indicium of reliability to Mr. Mitchell's accounting of events.

This Court found an inmate credible when other evidence in the record corroborated his testimony and when "no testimony squarely contradicted" the inmate's account. *See McKinnon*, 2023 WL 11158939 at *3. Here, the Warden has failed to present any evidence directly refuting Mr. Mitchell's account. Moreover, other evidence presented corroborates what Mr. Mitchell says he was told. Accordingly, the Court finds that Mr. Mitchell filed informal grievances but was thwarted from filing a formal grievance regarding the conditions of his restrictive housing cell because staff told him that he needed to wait for a response that never came and that he could only obtain a

12

formal grievance from staff who never visited his unit. *See Ross*, 578 U.S. at 644. Therefore, with Mr. Mitchell's account found reliable, the Court finds that the grievance process was rendered unavailable to Mr. Mitchell by the misrepresentation of prison staff, and the Warden's affirmative defense of exhaustion of administrative remedies should be overruled.

## IV. Conclusion

For these reasons, the undersigned:

(1) **GRANTS** the parties' Stipulation [DE 88];

(2) **FINDS** that Miami Correctional Facility rendered the grievance process unavailable to Plaintiff Darien Mitchell; and

(3) **RECOMMENDS** that this case proceed to discovery on the merits because Darien Mitchell did not fail to exhaust his available administrative remedies in violation of 42 U.S.C. § 1997e(a).

> **NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED** this 7th day of August 2024.

s/ Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge